UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **JEREMY FLETCHER,**<br>        Plaintiff,<br><br>v.<br><br>**MARTIN J. O'MALLEY,**<br>**Commissioner of the Social**<br>**Security Administration,**<br>        Defendant. | **Case No. 4:24-cv-117-CLM** |

# MEMORANDUM OPINION

Jeremy Fletcher seeks Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Fletcher's application in an opinion written by an Administrative Law Judge ("ALJ").

Fletcher argues that the ALJ erred by: (1) not reviewing the stop payment of Fletcher's child's SSI; (2) failing to consider whether Fletcher had good cause for not appearing at the ALJ hearing; (3) failing to adequately evaluate the opinion evidence in the record; and (4) not supporting his Step 2 and Step 3 findings with substantial evidence. The court agrees with Fletcher that the ALJ erred in not adequately evaluating the opinion evidence from Dr. Blotcky and Dr. Bennett. So the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner.

## I.   STATEMENT OF THE CASE

In 2012, just before his eleventh birthday, the SSA found Fletcher disabled and awarded him child's SSI because he suffered from an intellectual disability. (R. 102). Before discussing Fletcher's SSA proceedings, the court will discuss Fletcher's impairments as he described them in his adult function report.

### A. Fletcher's Disability, as described in the function report

Fletcher was 22 years old at the date of the ALJ's hearing decision. (R. 14, 102). And Fletcher has an 11th grade education. (R. 370).

Fletcher claims that he suffers from ADHD and a learning disability. (R. 369). These impairments prevent Fletcher from being able to concentrate for long periods of time, and he easily forgets what he is doing. (*Id.*). For example, Fletcher says that he struggles with his memory, completing tasks, and understanding and following instructions. (R. 380). Fletcher also doesn't handle stress well. (R. 381).

From the time Fletcher wakes up until he goes to bed, Fletcher watches TV, takes out the trash, cleans his room, eats, and showers. (R. 376). But Fletcher must be reminded to bathe, brush his teeth, change clothes, and make the bed. (R. 376–77). Fletcher prepares meals "once in a while," but his nana mainly cooks for him. (R. 377). Other housework Fletcher performs is picking up his room, putting his clothes away, and helping cut the grass—though Fletcher needs reminders to do these things. (*Id.*).

Fletcher goes outside every day and can go out alone. (R. 378). Fletcher also drives with a permit and shops in stores every few days. (*Id.*). While Fletcher can pay bills and count change, he cannot handle a savings account or use a checkbook/money orders. (*Id.*). Fletcher's hobbies include fishing and 4 wheelers, and he engages in these activities around once a week. (R. 379). Fletcher also regularly spends time with his cousins. (*Id.*).

### B. Fletcher's Child's SSI

Fletcher was awarded SSI benefits in 2012 because his intellectual disability met Listing 12.05. (R. 102). Fletcher had a secondary diagnosis of ADD/ADHD. (*Id.*). In 2016, the SSA determined that Fletcher continued to qualify for benefits because of his intellectual disability with the disability examiner noting that Fletcher was "not capable per doctor." (R. 74).

Soon after Fletcher turned 18, the SSA informed his father that Fletcher would stop receiving SSI payments in August 2018. (R. 255). The SSA stated that, even though Fletcher was over 18, it had decided to continue sending his SSI payments to his father. (*Id.*). But the SSA could not send further payments

because it needed "correct information about [Fletcher's] name, address, or bank account." (*Id.*). The next month, the SSA sent a letter to Fletcher, explaining that it planned to lower his monthly SSI payment "from $750.00 to $0.00 beginning in August 2018. The amount will change because you did not give us the information that we need." (R. 263). Both letters stated that Fletcher and his father had 60 days to appeal the SSA's decision to stop payment. (R. 257, 263–64). But neither Fletcher nor his father appealed.

### C.   Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |

| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |
|---|---|---|

*See* 20 C.F.R. §§ 416.920(a), 416.920(b) (Step 1); 20 C.F.R. § 416.920(c) (Step 2); 20 C.F.R. §§ 416.920(d), 404.925, 404.926 (Step 3); 20 C.F.R. § 404.920(e-f) (Step 4); 20 C.F.R. § 404.920(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### D.     Fletcher's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 416.1400(a)(1)-(4).

Fletcher filed his adult application for SSI benefits in April 2020, asserting that he suffered from ADHD and a learning disability. After receiving an initial denial in November 2020, Fletcher requested a hearing, which the ALJ conducted in April 2023. The ALJ ultimately issued an opinion denying Fletcher's claims in June 2023.

At Step 1, the ALJ determined that Fletcher was not engaged in substantial gainful activity and thus his claims would progress to Step 2.

At Step 2, the ALJ determined Fletcher suffered from the following severe impairments: attention deficit-hyperactivity disorder (ADHD) and borderline intellectual disorder.

At Step 3, the ALJ found that none of Fletcher's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Fletcher's residual functional capacity.

The ALJ determined that Fletcher had the residual functional capacity to perform a full range of work at all exertional levels with the following non-exertional limitations:

- Fletcher can understand, remember, and carry out short, simple (but not detailed) instructions.

- Fletcher can maintain attention and concentration to tasks for two hours at a time in an eight-hour day.

- Fletcher needs casual supervision and interaction with the public.

- Fletcher needs help with planning and goal setting.

- Any change to Fletcher's work setting should be no more than occasional and gradually introduced.

At Step 4, the ALJ found that Fletcher had no past relevant work experience. At Step 5, the ALJ determined that Fletcher could perform jobs, such as housekeeping cleaner, floor waxer, and garbage collector that exist in significant numbers in the national economy and thus Fletcher was not disabled under the Social Security Act.

Fletcher requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.   STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).

"Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

### III. LEGAL ANALYSIS

Fletcher makes four arguments for why the ALJ erred. First, Fletcher says that the ALJ should have reviewed Fletcher's application as one for reinstatement of benefits rather than as a new application. Second, Fletcher asserts that the ALJ erred in failing to consider whether Fletcher had good cause for failing to appear at the ALJ hearing. Third, Fletcher argues that the ALJ erred in not properly evaluating opinion evidence from Dr. Blotcky, Dr. Bennett, and Dr. Neville. Finally, Fletcher contends that substantial evidence doesn't support the ALJ's findings at Steps 2 and 3 of the five-step process.

The court agrees that the ALJ erred in not specifically addressing the persuasiveness of Dr. Blotcky and Dr. Bennett's opinion evidence. So the court needn't address Fletcher's other arguments for reversal.

Under the regulations that apply to Fletcher's SSI application, an ALJ must articulate how persuasive he finds "***all*** the medical opinions and prior administrative findings" in the claimant's record. *See* 20 C.F.R. § 416.920c(b) (emphasis added). ALJs focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency and ***must explain*** how they considered these two factors. *See* 20 C.F.R. § 416.920c(b)(2). The ALJ may, but need not, consider other factors such as the medical source's relationship with the claimant and specialization. *See id.* Under the supportability factor "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his . . . medical opinion(s) . . . , the more persuasive the . . . medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(1). And under the consistency factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

6

1. <u>Background</u>: Dr. Blotcky is a clinical psychologist who evaluated Fletcher when he first applied for SSI in 2012. (R. 491). Dr. Blotcky estimated Fletcher's "intellectual abilities fall at the upper end of the Mildly Retarded range." (R. 492). While Dr. Blotcky found that Fletcher's "thought processes were logical and orderly," he determined that Fletcher's judgment and insight were limited. (*Id.*). Dr. Blotcky found that Fletcher's IQ was 62 and recommended that Fletcher: (1) receive psychiatric treatment for his ADHD, (2) be in special education classes, (3) receive speech therapy, and (4) participate in age-appropriate social activities with peers. (R. 493–94). Dr. Blotcky also said that Fletcher's "intellectual limitations are a lifelong problem," prognosis is poor, and "limitations are marked in severity." (R. 494).

Dr. Bennett is another clinical psychologist who evaluated Fletcher when Fletcher's ability to continue receiving child's SSI was up for review in 2016. (R. 503–507). Dr. Bennett found that Fletcher's IQ was 66 placing "him in the range of mild mental retardation." (R. 505). Dr. Bennett also found that Fletcher "cannot manage his own financial benefits" and "probably does have a lifelong history of mental retardation." (R. 506). Though Fletcher's activities and interests were not significantly constricted, his ability to relate to others was mildly impaired. (*Id.*). And Fletcher had a moderate impairment in his ability to cognitively function in an age-appropriate manner. (*Id.*). Dr. Bennett also found mild impairments in Fletcher's (a) ability to function communicatively, socially, adaptively, and behaviorally, and (b) concentration, persistence, and pace. (*Id.*). Finally, Dr. Bennett said that he found that attention deficit hyperactivity disorder was not an appropriate diagnosis for Fletcher. (*Id.*).

The ALJ exhibited the evaluations from Dr. Blotcky and Dr. Bennett as Exhibits 1F and 4F. (R. 491–94, 503–07). And the ALJ reviewed "these exhibits to ensure there was no evidence of any disabling limitation that would fall within the current period under review," *i.e.*, April 3, 2020, through the date of the ALJ's decision. (R. 18, 23). But the ALJ did not specifically address how persuasive he found Dr. Blotcky or Dr. Bennett's opinions. Nor did the ALJ explain how he considered the supportability and consistency factors when evaluating the opinions from Dr. Blotcky and Dr. Bennett.

2. <u>ALJ's error</u>: The parties dispute whether the relevant period for Fletcher's adult application for SSI benefits includes the period before Fletcher filed his application in April 2020. But even if the Commissioner is correct that the relevant period was from April 2020 until the date of the ALJ's hearing decision, the ALJ erred in not discussing the persuasiveness of Dr. Blotcky and Dr. Bennett's opinions in light of the supportability and consistency factors.

As explained, ALJs are required to articulate "how persuasive [they] find all of the medical opinions" in the claimant's case record. *See* 20 C.F.R. § 416.920c(b). In doing so, an ALJ must explain how he considered "the supportability and consistency factors for a medical source's medical opinions." *See* 20 C.F.R. § 416.920c(b)(2). So while an ALJ may find a medical source's opinion not persuasive or of little relevance because it predates the relevant period, an ALJ errs when he does not evaluate a medical opinion that's in the record or explain how he considered the supportability and consistency factors when assessing the medical opinion. *See Simpson v. Colvin*, 2:14-cv-946-AKK, 2015 WL 139329, at *3–4 (N.D. Ala. Jan. 12, 2015) (applying similar rule to old regulations).

The ALJ mentioned the evidence from Dr. Blotcky and Dr. Bennett by noting that it was outside the period under review and before Fletcher turned 18 but that the ALJ considered this evidence "to ensure there was no evidence of any disabling limitation that would fall within the current period under review." (R. 23). The Commissioner says that because the Blotcky and Bennett opinions predate the relevant period and have little relevance to Fletcher's adult SSI application, the ALJ did not err by failing to provide a detailed evaluation of the opinions. While the ALJ may not have been required to provide a detailed explanation on how he viewed Dr. Blotcky and Dr. Bennett's opinions, he was required to give ***some explanation*** for how persuasive he found these opinions because they were medical opinions in Fletcher's case record. *See* 20 C.F.R. § 416.920c(b). And the ALJ failed to state (a) whether he found these opinions persuasive, or (b) how he considered the supportability and consistency factors in evaluating Dr. Blotcky and Dr. Bennett's opinions. Thus, the court finds that the ALJ erred in not adequately evaluating the opinion evidence from Dr. Blotcky and Dr. Bennett.

3. <u>Error not harmless</u>: The court also finds that the ALJ's error wasn't harmless. The court cannot say that Dr. Blotcky and Dr. Bennett's opinions about Fletcher's childhood impairments have ***no bearing*** on Fletcher's condition as an adult without reweighing the evidence—something that this court cannot do. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *see also Simpson*, 2015 WL 139329, at *4 (mere fact opinion predated disability onset date not grounds for finding ALJ's error was harmless). The ALJ very well may have determined that Dr. Blotcky and Dr. Bennett's opinions weren't persuasive because they evaluated Fletcher when he was a child and several years before he filed for adult SSI. But the ALJ also could have found that Dr. Blotcky and Dr. Bennett's findings that Fletcher's intellectual impairments would be "lifelong problems," (R. 494, 506) meant that their opinions were relevant. So while the court could guess about how persuasive the ALJ found Dr. Blotcky and Dr. Bennett's opinions, "[t]o do so would call for conjecture that invades the province of the ALJ." *Mills v. Astrue*, 226 F. App'x 926, 931 (11th Cir. 2007).

Plus, the court finds that a reasonable person who found Dr. Blotcky and Dr. Bennett's opinions persuasive may have reached different findings than the ALJ. For example, at Step 3 the ALJ found that Fletcher had borderline intellectual functioning and not an intellectual disorder, but both Dr. Blotcky and Dr. Bennett found that Fletcher suffers from "mild mental retardation." (R. 494, 506). These findings from Dr. Blotcky and Dr. Bennett also contradict the ALJ's determination that the evidence didn't show "current intellectual and adaptive functioning that began prior to the attainment of age 22." (R. 21). The court thus finds that it must remand this case for the ALJ to articulate how persuasive he finds Dr. Blotcky and Dr. Bennett's opinions.

\* \* \*

For these reasons, the court will remand this case for the ALJ to articulate how persuasive he finds the opinion evidence from Dr. Blotcky and Dr. Bennett and how he considered the supportability and consistency factors in reaching this determination. In remanding this case for reconsideration of Dr. Blotcky and Dr. Bennett's opinions, the court is not holding that the ALJ must find these medical source opinions persuasive. Rather, the court is merely requiring the ALJ to explain his rationale in evaluating these opinions.

9

As stated, because the court is remanding this case for reconsideration of Dr. Blotcky and Dr. Bennett's opinions the court needn't address Fletcher's other arguments for reversal. But on remand, the ALJ should reconsider the persuasiveness of Dr. Neville's opinions in light of how persuasive the ALJ finds Dr. Blotcky and Dr. Bennett's opinions. The ALJ should also consider whether Dr. Blotcky and Dr. Bennett's opinions undermine the ALJ's finding at Steps 2 and 3 that Fletcher does not suffer from an intellectual disorder.

And if Fletcher still contends that he is entitled to reinstatement of his childhood benefits, he should explain to the ALJ (a) the circumstances of the August 2018 stop payment, (b) why the April 2020 SSI application should be construed as a request for reinstatement, and (c) why Fletcher believes the ALJ can reinstate his child's SSI benefits when he did not appeal the stop payment within 60 days of receiving notice that the SSA would stop paying him benefits. If Fletcher makes these arguments to the ALJ, the court expects that the ALJ will more fully address this issue in his new hearing opinion.

## IV. CONCLUSION

For the reasons stated above, the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner. The court will enter a separate final order that closes this case.

**Done** on November 18, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE